UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x     15 Civ. 1043 (LGS)
TRAYVON THOMPSON,

                                          Plaintiff,

                                                          AMENDED COMPLAINT

        -against-
                                                          JURY DEMAND


THE CITY OF NEW YORK, DETECTIVE
MANUEL J. PEREZ (Shield # 743; Tax # 925904),
POLICE OFFICER ADAM KREITZBERG
(Shield # 26963; Tax # 931772); SERGEANT
CHRISTOPHER CESARZ (Tax # 903596),
DETECTIVE DAVID BELL (Tax # 918576) and
DETECTIVE/POLICE OFFICER JOHN DOE 1,

                                          Defendants.
------------------------------------------------------------------x

Trayvon Thompson (hereinafter "plaintiff"), by his attorney(s) The Law Offices of Wale
Mosaku, P.C., complaining of the defendants The City of New York, Detective Manuel J.
Perez (Shield # 743; Tax # 925904), Police Officer Adam Kreitzberg (Shield # 26963;
Tax # 931772), Sergeant Christopher Cesarz (Tax # 903596), Detective David Bell (Tax
# 918576) and Detective/Police Officer John Doe 1 (hereinafter collectively referred to as
"the defendants"), alleges as follows:

## NATURE OF THE ACTION

1.          This is an action at law to redress the deprivation of rights secured to
            the plaintiff under color of statute, ordinance, regulation, custom, and
            to redress the deprivation of rights, privileges, and immunities
            secured to the plaintiff by the Fourth, Fifth, Sixth and Fourteenth
            Amendments to the Constitution of the United States, and by Title 42
            U.S.C. § 1983.

## JURISDICTION

2.          The jurisdiction of this Court is invoked pursuant to 42 U.S.C.
            Section 1983, 28 U.S.C. Section 1343, 28 U.S.C. Section 1331 and

under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

3.     As the deprivation of rights complained of herein occurred within the Southern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

## THE PARTIES

4.     Plaintiff is a citizen of the United States, resident in Bronx County, New York State. Plaintiff is a black male of full age.

5.     At all times alleged herein, defendants Detective Manuel J. Perez (Shield # 743; Tax # 925904), Police Officer Adam Kreitzberg (Shield # 26963; Tax # 931772), Sergeant Christopher Cesarz (Tax # 903596), Detective David Bell (Tax # 918576) and Detective/Police Officer John Doe 1 (hereinafter collectively referred to as "defendant officers") were law enforcement officers employed by the Police Department of the City of New York ("NYPD").

6.     At all times alleged herein, the defendant officers were acting under the color of their official capacity and their acts were performed under color of the statutes and ordinances of the City of New York and the State of New York.

7.     At all relevant times, the defendant City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York, and was the employer of the defendant officers through its Police Department, namely the NYPD, and the actions of the defendant officers complained of herein were done as part of the custom, practice, policy, usage, regulation and/or direction of the City of New York.

8.     Plaintiff sues all defendants in their individual and official capacities.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9.     On or about December 20, 2012, at approximately 10:00 a.m., inside of the Bronx Criminal Courthouse located at 215 East 161st Street, Bronx, New York 10451, (hereinafter "subject premises"), the

plaintiff was unlawfully arrested by defendants Detective David Bell and Detective/Police Officer John Doe 1.

10.      That the plaintiff was at the subject premises at the above-referenced date and time, pursuant to the directive of a Summons that he had previously received for an "*open container*" infraction.

11.      That at the time of his arrest at the subject premises, the plaintiff was with his girlfriend, namely Shontiqua Baldwin.

12.      That prior to the time of his arrest, as the plaintiff was seated outside of the "summons part" courtroom within the subject premises, the defendants Detective David Bell and Detective/Police Officer John Doe 1 had approached the area where the plaintiff was seated, and asked "*who is Trayvon Thompson*?"

13.      That in response the plaintiff identified himself, following which the defendants Detective David Bell and Detective/Police Officer John Doe 1 asked the plaintiff to step into the courtroom with them.

14.      That after the plaintiff entered into the courtroom, defendants Detective David Bell and Detective/Police Officer John Doe 1 instructed the plaintiff that he was to go with them for "*questioning*".

15.      That at that juncture, defendants Detective David Bell and Detective/Police Officer John Doe 1 did not inform the plaintiff what he was to be questioned about.

16.      That the defendants Detective David Bell and Detective/Police Officer John Doe 1 then placed the plaintiff in handcuffs.

17.      That after the defendants Detective David Bell and Detective/Police Officer John Doe 1 placed the plaintiff in handcuffs, he asked them why he was being placed in handcuffs if they only wanted to question him.

18.      That in response, the defendants Detective David Bell and Detective/Police Officer John Doe 1 told the plaintiff that he had an "*I-Card warrant*".

19.      That the defendants Detective David Bell and Detective/Police Officer John Doe 1 had arrested the plaintiff, following the issuance and/or activation of an "*Investigation Card*" ("I-Card") by defendant Detective Manuel J. Perez on December 7, 2012, as set forth in an NYPD document prepared by Detective Manuel J. Perez on December 7, 2012 entitled "***Complaint - Follow Up Informational Report - Activate Investigation Card***" (**"Follow-Up No. 13"**).

20.      That indeed, on December 20, 2012, following the plaintiff's arrest, the defendant Detective David Bell had prepared an NYPD document entitled "***Complaint - Follow Up Informational Report - General Investigation***" (**"Follow-Up No. 22"**), within which he had stated that the "*Unit Reporting*" was the "***Bronx Warrant Apprehens***".

21.      That within the above-referenced "***Complaint - Follow Up Informational Report - General Investigation***" (**"Follow-Up No. 22"**), defendant Detective David Bell further stated, *inter alia*, that on "*December 20, 2012, at approximately 0900 hrs*", he "*did attempt to locate and apprehend*" the plaintiff "*at his scheduled court appearance at the Bronx Criminal Court Part # SAP, located at 215 East 161 Street in the confines of the 44 pct.*", and that at "*approximately 1035 hrs*" he "*did locate and apprehend*" the plaintiff "*and transported him to the 041 pct. For processing without incident*".

22.      That in fact, on December 20, 2012, the defendants Detective David Bell and Detective/Police Officer John Doe 1 were assigned to the NYPD's "***Bronx Warrants***" squad.

23.      That within the above-referenced I-Card, defendant Detective Manuel J. Perez had indicated, *inter alia*, that the plaintiff was "*sought as*" a "*perpetrator*" of a crime.

24.      That on December 6, 2012, prior to the issuance and/or activation of the I-Card, the defendant Detective Manuel J. Perez had prepared an NYPD document entitled "***Complaint - Follow Up Informational***

*Report - Mugshot Photo Viewing*" ("**Follow-Up No. 4**") wherein he had indicated that on December 5, 2012, he had conducted a "*mugshot photo viewing for the C/V in regards to the robbery incident*", and that the crime victim, namely Brandon A. Cortez, "*was able to conduct a positive identification of…*" the plaintiff.

25.    That in fact, that was untrue, as Mr. Cortez had not "*positively*" identified the plaintiff as the perpetrator of the crime against him to defendant Detective Manuel J. Perez.

26.    That at the time defendant Detective Manuel J. Perez issued the I-Card, he was aware that the plaintiff had not been "*positively*" identified by Mr. Cortez as the perpetrator of a crime.

27.    That following his arrest, the defendants Detective David Bell and Detective/Police Officer John Doe 1 transported the plaintiff to the 41st police precinct station house, located at 1035 Longwood Avenue, Bronx, New York 10459.

28.    That upon arrival at the 41st precinct station house the plaintiff was placed in a cell.

29.    That subsequently, at approximately 08:00 p.m., the plaintiff was taken out of the cell and questioned by defendant Detective Manuel Perez.

30.    That during the questioning, the defendant Detective Manuel Perez asked the plaintiff if he could recall where he was on December 5, 2012, at approximately 07:00 p.m.

31.    That the plaintiff informed the defendant Detective Manuel Perez that in fact he could, and that at that time and date, he was within the "Fedex/Kinkos" premises located at 600 3rd Street, New York, New York 10016 (hereinafter "Fedex location").

32.    The defendant Detective Manuel Perez asked the plaintiff what he was doing at that location at that time, and the plaintiff responded that he was mostly surfing the web, and that there was surveillance

footage at the Fedex location that would confirm that he was in fact at that location at that date and time.

33.   That in fact, the Fedex location did (and does) have video footage that confirmed that the plaintiff was at said location on December 5, 2012, at approximately 07:00, conclusively proving that the plaintiff was not the perpetrator of the above-mentioned robbery incident that occurred in the <u>Bronx</u>.

34.   In response, rather than attempt to verify the alibi that the plaintiff had just provided him with, the defendant Detective Manuel Perez disregarded the plaintiff, and told him that he was not at the Fedex location on December 5, 2012, at approximately 07:00 p.m.

35.   That at that juncture the defendant Detective Manuel Perez informed the plaintiff that there had been a "*cell phone*" robbery on December 5, 2012, at approximately 07:00 p.m.

36.   That subsequently, following his arrest on December 20, 2012, the plaintiff was transported to the 62 precinct station house, located at 1086 Simpson Street, Bronx, New York 10459, and compelled to participate in a line-up procedure that was conducted by defendants Sergeant Christopher Cesarz and Police Officer Adam Kreitzberg.

37.   That the defendant Police Officer Adam Kreitzberg prepared an NYPD document entitled "***Lineup Information Report***" (**PD 373-151**) wherein he had indicated that the lineup had occurred on December 20, 2012, at **18:25 p.m**.

38.   Within the "***Lineup Information Report***" the defendant Police Officer Adam Kreitzberg had also indicated that defendant Sergeant Christopher Cesarz was the Supervisor that was <u>present</u> at the time of said lineup.

39.   That the defendant Police Officer Adam Kreitzberg had further prepared an NYPD document entitled "***Lineup Administration Report***" (**PD 373-152**) within which the only handwriting of Mr. Cortez contained therein was his <u>signature</u>.

40.     That at the conclusion of the line-up, the plaintiff was informed by the defendant officers Sergeant Christopher Cesarz and Police Officer Adam Kreitzberg that Mr. Cortez had identified him during the line-up procedure as the perpetrator of the robbery incident of December 5, 2012.

41.     That in fact, that was untrue, as Mr. Cortez had not identified the plaintiff during the above-referenced line-up procedure as the perpetrator of the robbery incident of December 5, 2012.

42.     That indeed, following the above-referenced line-up procedure, the defendant Police Officer Adam Kreitzberg prepared an NYPD document entitled "***Complaint - Follow Up Informational Report - Line Up***" ("**Follow-Up No. 24**") dated December 20, 2012 wherein he had stated that "at ***20:40 hrs[1], the U/S did conduct a Line Up at 1086 Simpson Street  with Defendant Thompson, Trayvon…seated in position # 3***…" but that "[*t*]***he witness did view the Line Up and was <u>unable</u> to positively identified (sic) the defendant Thompson, Trayvon***" (emphasis supplied).

43.     That nevertheless, subsequently, the defendant Police Officer Adam Kreitzberg prepared an arrest report, wherein he stated that the plaintiff "*was arrested for robbery which occurred on December 5, 2012*".

44.     That within the above-referenced arrest report, the defendant Police Officer Adam Kreitzberg indicated that the plaintiff's arrest date was "*12-20-2012*" and the plaintiff's arrest time was "***15:15:00***"[2].

45.     That the defendant Sergeant Christopher Cesarz reviewed and approved of said arrest report.

---

[1] And not "**18:25**" as he had set forth in the "*Lineup Information Report*" and "*Lineup Administration Report*".

[2] Of note is that the time indicated on said arrest report is approximately five hours <u>after</u> the defendant Detective David Bell indicated he <u>apprehended</u> the plaintiff (10:35 a.m.); and approximately five hours <u>before</u> the defendant Police Officer Kreitzberg indicated that he conducted the line-up procedure (20:40 p.m.).

46.    That following the plaintiff's arrest the defendant Police Officer Adam Kreitzberg prepared an NYPD document entitled "***Complaint - Follow Up Informational Report - Cancel Investigation Card***" ("**Follow-Up No. 25**"), wherein the "***topic/subject***" was "***(Cancel Investigation Card) Cancel I-Card for Trayvon Thompson***" because the plaintiff had been arrested on December 20, 2012 "***by icard team***".

47.    That as set forth above, the defendant officers, including but not limited to defendant Detective Manuel Perez, unreasonably failed to investigate the plaintiff's alibi, and the defendants Sergeant Christopher Cesarz and Police Officer Adam Kreitzberg subsequently forwarded false and fabricated documents and information, including but not limited to the above-referenced arrest report, to the Bronx County District Attorney ("BCDA"), implicating the plaintiff in the commission of the above-referenced crime.

48.    That by their above-referenced actions, the defendant officers Detective Manuel Perez, Sergeant Christopher Cesarz and Police Officer Adam Kreitzberg initiated and/or commenced the criminal action against the plaintiff in Bronx County Criminal Court.

49.    That in reliance upon the information that the defendant officers Detective Manuel Perez, Sergeant Christopher Cesarz and Police Officer Adam Kreitzberg had provided to them, the BCDA subsequently prosecuted the plaintiff for the above-referenced crime.

50.    Following his arrest, the plaintiff was arraigned in Bronx County Criminal Court on felony charges, upon which he entered a plea of "*not guilty*".

51.    Bail was set at an amount that the plaintiff could not afford to post, and as such, the plaintiff was remanded to the Rikers Island Correctional Facility.

52.    The plaintiff was not subsequently indicted by a grand jury. However, the plaintiff, who was under parole supervision at the time

of his arrest, was deemed to have violated a condition of his parole due to the arrest of December 20, 2012.

53. As such, the plaintiff, who ordinarily should have been released pursuant to Criminal Procedure Law §180.80, was caused to remain in custody at Rikers, because of the parole violation that was triggered solely by the arrest of December 20, 2012.

54. Consequently, the plaintiff remained at the Rikers Island Correctional Facility, even after the criminal charges against him were dismissed on March 11, 2013, because of the parole violation that was triggered by the arrest of December 20, 2012.

55. The plaintiff's designated arrest number was "B12691510". The plaintiff's designated Bronx County Criminal Court docket number was "2012BX072354".

## CAUSE OF ACTION AGAINST DEFENDANT OFFICERS DETECTIVE MANUEL PEREZ, DETECTIVE DAVID BELL AND DETECTIVE/POLICE OFFICER JOHN DOE 1: FALSE ARREST AND FALSE IMPRISONMENT UNDER 42 U.S.C § 1983

56. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 55 of this complaint as though fully set forth herein.

57. That the defendant Detective Manuel Perez' above-referenced unlawful action(s), including but not limited to the issuance and/or activation of the above-referenced I-card on December 7, 2012, was/were the direct and proximate cause of the arrest of the plaintiff by the defendants Detective David Bell and Detective Police Officer John Doe 1 on December 20, 2012.

58. That the defendants Detective David Bell and Detective Police Officer John Doe 1's actions in physically arresting the plaintiff on December 20, 2012, despite their knowledge and awareness that no Court of competent jurisdiction had issued a warrant directing the arrest of the plaintiff, were unlawful and illegal.

59.     The arrest, detention and imprisonment of plaintiff were without just or probable cause and without any warrant or legal process directing or authorizing the plaintiff's arrest or subsequent detention.

60.     As a result of plaintiff's false arrest and imprisonment, he has been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know him, was prevented from attending to his necessary affairs, and has been otherwise damaged.

61.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against the above-referenced defendant officers, individually and severally.

62.     The above-referenced defendant officers were at all material times acting within the scope of their employment with the NYPD, and as such, their above-referenced actions were made and/or performed under color of law.

## CAUSE OF ACTION AGAINST DEFENDANT OFFICERS DETECTIVE MANUEL PEREZ, POLICE OFFICER ADAM KREITZBERG AND SERGEANT CHRISTOPHER CESARZ: MALICIOUS PROSECUTION UNDER 42 U.S.C § 1983/NEW YORK STATE LAW

63.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 62 of this complaint as though fully set forth herein.

64.     The commencement and continued prosecution of the criminal judicial proceeding against plaintiff, including the arrest, the imprisonment, and the charges against plaintiff were committed by or at the insistence of the defendants Detective Manuel Perez, Police Officer Adam Kreitzberg and Sergeant Christopher Cesarz without probable cause or legal justification, and with malice.

65.     That the above-referenced defendants were directly involved in the initiation of criminal proceedings against the plaintiff.

66.     That the above-referenced defendants lacked probable cause to initiate criminal proceedings against the plaintiff.

67.     That the above-referenced defendants acted with malice in initiating criminal proceedings against the plaintiff.

68.     That the above-referenced defendants were directly involved in the continuation of criminal proceedings against the plaintiff.

69.     That the above-referenced defendants lacked probable cause in continuing criminal proceedings against the plaintiff.

70.     That the above-referenced defendants acted with malice in continuing criminal proceedings against the plaintiff.

71.     That the above-referenced defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

72.     That the above-referenced defendants misrepresented and falsified evidence to the prosecutors in the BCDA's office.

73.     That the above-referenced defendants withheld exculpatory evidence from the prosecutors in the BCDA's office.

74.     That the above-referenced defendants did not make a complete statement of facts to the prosecutors in the BCDA's office.

75.     The criminal judicial proceeding initiated against plaintiff was dismissed on March 11, 2013, and terminated in the plaintiff's favor.

76.     The arrest, imprisonment and prosecution of the plaintiff were malicious and unlawful, because plaintiff had committed no crime and there was no probable cause to believe that plaintiff had committed any crimes.

77.     The above-referenced defendants actions were intentional, unwarranted and in violation of the law. The above-referenced defendants had full knowledge that the charges made before the Court against the plaintiff were false and untrue.

78.     As a consequence of the malicious prosecution by the above-referenced defendants, plaintiff suffered a significant loss of liberty,

humiliation, mental anguish, depression and his constitutional rights were violated.

79.     The above-referenced defendant officers were at all material times acting within the scope of their employment with the NYPD, and as such, their above-referenced actions were made and/or performed under color of law.

80.     Plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against the above-referenced defendant officers, individually and severally.

<u>CAUSE OF ACTION AGAINST DEFENDANT OFFICERS DETECTIVE MANUEL PEREZ, POLICE OFFICER ADAM KREITZBERG AND SERGEANT CHRISTOPHER CESARZ: DENIAL OF A CONSTITUTIONAL RIGHT TO A FAIR TRIAL UNDER 42 U.S.C § 1983 DUE TO THE FABRICATION OF EVIDENCE</u>

81.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 80 of this complaint as though fully set forth herein.

82.     That contrary to the false representations made by the defendant Detective Manuel Perez as set forth above, the complaining victim did not "*positively*" identify the plaintiff during the above-referenced photo array procedure of December 5, 2012, as the perpetrator of the robbery incident against him.

83.     That as confirmed by the above-referenced "***Complaint - Follow Up Informational Report - Line Up***" (**"Follow-Up No. 24"**) dated December 20, 2012, the defendants Police Officer Adam Krietzberg and Sergeant Christopher Cesarz knew that the complaining victim did not "*positively*" identify the plaintiff as the perpetrator of the robbery incident against him, during the above-referenced line-up procedure of December 20, 2012.

84.     Nevertheless the defendants Police Officer Adam Krietzberg and Sergeant Christopher Cesarz had prepared and signed the above-

referenced "*Lineup Administration Report*" (**PD 373-152**), wherein they indicated that the victim had stated that he saw the plaintiff "*following*" him.

85.     That subsequently the defendants Police Officer Adam Krietzberg and Sergeant Christopher Cesarz had prepared and signed the above-referenced arrest report in which they stated that the plaintiff was arrested for the above-referenced robbery.

86.     That the above-referenced statements and representations by the above-referenced officers were complete fabrications, as the victim had not positively identified the plaintiff as the perpetrator of the robbery incident either during the above-referenced photo array procedure of December 5, 2012, nor during the above-reference line-up procedure of December 20, 2012.

87.     As set forth above, the above-referenced defendants created false evidence against the plaintiff.

88.     As set forth above, the above-referenced defendants forwarded the above-referenced false evidence and false information/documentation to the prosecutors in the BCDA's office.

89.     As set forth above, the above-referenced defendants were directly involved in the initiation of criminal proceedings against the plaintiff.

90.     As set forth above, the above-referenced defendants lacked probable cause to initiate criminal proceedings against the plaintiff.

91.     That the above-referenced defendants acted with malice in initiating criminal proceedings against the plaintiff.

92.     That the above-referenced defendants were directly involved in the continuation of criminal proceedings against the plaintiff.

93.     That the above-referenced defendants lacked probable cause in continuing criminal proceedings against the plaintiff.

94.     That the above-referenced defendants acted with malice in continuing criminal proceedings against the plaintiff.

95.     That the above-referenced defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

96.     That the above-referenced defendants misrepresented and falsified evidence to the prosecutors in the BCDA's office.

97.     That the above-referenced defendants withheld exculpatory evidence from the prosecutors in the BCDA's office.

98.     That the above-referenced defendants did not make a complete statement of facts to the prosecutors in the BCDA's office.

99.     By creating false evidence against the plaintiff; forwarding false evidence and information to the prosecutors; and by providing false and misleading testimony throughout the criminal proceedings, the above-referenced defendants violated the plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

100.    As a consequence of the above-referenced defendants' actions, plaintiff suffered loss of liberty, humiliation, mental anguish, depression, and his constitutional rights were violated.

101.    As such, the plaintiff hereby demands compensatory damages and punitive damages, in an amount to be determined at trial, against each of the above-referenced defendants, individually and severally.

CAUSE OF ACTION AGAINST THE DEFENDANT CITY OF NEW YORK:
MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

102.    By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 101 of this complaint as though fully set forth herein.

103.    The acts complained of were carried out by the individual defendant officers in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

104.    The defendant officers acted under color of law, in their official capacity, and their acts were performed pursuant to the customs,

policies, usages, practices, procedures and rules of the City of New York and its police department.

105.    The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practice(s): wrongfully arresting and/or detaining innocent members of the public pursuant to the unlawful issuance of "I-Card(s)".

106.    That an I-card was and is an illegal and unconstitutional departmental tool utilized by the NYPD, wherein an investigating detective, such as defendant Detective Manuel Perez, who desired (or desires) to question a member of the public, rather than follow due process and seek an arrest warrant from a court of competent jurisdiction, prepared (or prepares) said I-card, and thereafter caused (or causes) same to be dispersed and disseminated within the NYPD computer system.

107.    That the intent and practical effect of said I-card was and is to serve as a court issued arrest warrant.

108.    That any member of the NYPD who became (or becomes) aware of said I-card, such as the defendants Detective David Bell and Detective/Police Officer John Doe 1, was and is trained to seek and/or arrest and/or detain the subject of the I-card, and thereafter present the subject of the I-card to the detective who issued the I-card.

109.    That sworn testimony offered by NYPD officers confirms the existence of the NYPD policy and practice of arresting and/or detaining innocent members of the public pursuant to the unlawful issuance of "I-card(s)", as follows:

   a.   In a case captioned Jeff Beausejour v. The City of New York, et al - Eastern District of New York - 11 Civ. 625 (PKC)(LB), in which the plaintiff alleged, *inter alia*, that he had been wrongfully arrested and detained by NYPD officers on

January 5, 2010, a defendant officer, namely Detective Joseph Solomon (Shield # 4647), had testified (on July 11, 2013), *inter alia*, that he had prepared an I-card prior to the arrest of Mr. Beausejour; that he had prepared said I-card "***because we were looking for him***"; that "***an I-card is a tool used by detectives to identify a person that they are looking for in regards to a crime***"; that once he prepared the I-card, he had inputted it into an "*ADW*" system, which is "***for persons being sought after by the New York City Police Department. Their name would be on that system***"; that "***the entire New York City Police Department***" had access to that system; that if an officer comes into contact with a person whose name is indicated in an I-card he prepares, that said officer "***should place that individual under arrest***"[3]; even though an I-card "***is not an arrest warrant, no***".

b. In a case captioned <u>Kiama Faltine v. The City of New York</u>, et al - Eastern District of New York - 12 Civ. 3487(ENV)(SMG), in which the plaintiff alleged, *inter alia*, that he had been wrongfully arrested and detained by NYPD officers on March 12, 2012, a defendant officer, namely Police Officer Miguel Vargas (Shield # 13912), had testified (on February 20, 2013) *inter alia*, that following the arrest of Mr. Faltine, he became aware that there was an "*active*" I-card that had been issued with respect to Mr. Faltine; that I-cards are issued by the "*Detective Bureau*"; that "***an I-card is something saying that someone is wanted for questioning or sought for whatever reason by the police department***"; that an "***I-card could be just like a warrant. It comes up in the same --It comes up the same as a warrant comes up. There***

---

[3] Mr. Beausejour was arrested by other defendant officers pursuant to the I-card that Detective Solomon prepared.

*is some sort of investigation involving that person which is why he would be detained, he or she*"; and when asked whether anyone within the NYPD had informed him that an I-card is an arrest warrant or similar to an arrest warrant, responded "…*It is what we were told, you know, when you run someone, you run their name for a warrant or whatever. When that comes up, that is what we know to do…To detain until we get a hold of whoever issued the I-card, and then be guided by that*"; and that he had been instructed to take such actions during the course of his employment at the NYPD, prior to the arrest of Mr. Faltine.

c.  In a case captioned <u>Michael Johnson, et al v. The City of New York</u>, et al - New York State Supreme Court, Kings County - Index # 3571/2012, a defendant officer, namely Police Officer David Greico (Shield # 18061) had testified (on May 19, 2015) *inter alia*, that the NYPD's "*Warrant Squad*" "*normally go after felony warrants or "I" cards*…"; that an "I" card "*is similar to a warrant, but not from the DA's office, but from the New York City Police Department. If somebody commits an offense and there is an open report against them, we put an "I" card out showing there is probable cause to arrest them or maybe just a witness to something*"; that I-cards are issued by "*the Detective Squad in the precinct*"; and when asked what would happen if he comes into contact with somebody that his system informs him has an I-card attached to his name, responded that such a person would be arrested "*as long as it is a probable cause to arrest. <u>Sometimes</u> if you are just a witness for a homicide, we do not arrest that person*".

110.    Additionally, in an action captioned <u>Stephen Walker v. The City of New York</u>, et al - Eastern District of New York - 14 Civ. 6413

(JG)(JO), in which the plaintiff alleged, *inter alia*, that he had been wrongfully arrested on October 30, 2013 within his residence, pursuant to the issuance/activation of I-card, by NYPD officers who did not have an arrest warrant, the defendant City's counsel had informed the plaintiff's counsel, via email, that she "*just spoke with Detective Winters who informed me that the warrants squad picked up your client from his home... He indicated that he was the one who issued the I card after conducting a photo array with the complaining victim*".

111.      Furthermore, in an action captioned <u>Jah-son Perry v. The City of New York</u>, et al - Eastern District of New York - 15 Civ. 3247 (KAM)(MDG), the plaintiff alleged, *inter alia*, that he had been wrongfully arrested on June 1, 2015 within his mother's residence by NYPD officers who did not have an arrest warrant, pursuant to the issuance/activation of an I-card by NYPD Detective Clint Moody. At the time of his arrest, the apprehending officers informed Mr. Perry that there was a "***warrant***" out for his arrest "***in the system***", and that he was wanted for "***questioning***". Mr. Perry further alleges that, upon his release from custody, Detective Clint Moody, apparently satisfied that Mr. Perry had no involvement in the incident he was investigating, advised him to go home and stay indoors for a while, so that the "***warrant***" could clear from "***the system***", <u>because any cop who came into contact with Mr. Perry while the "*warrant*" was "*in the system*" would arrest him again</u>.

112.      The above-referenced document that the defendant Police Officer Adam Kreitzberg prepared entitled "***Complaint - Follow Up Informational Report - Cancel Investigation Card***" ("**Follow-Up No. 25**"), wherein he sought the cancellation of the I-card because the plaintiff had been arrested "***by icard team***", confirms the existence of team(s) or squad(s) within the NYPD whose specific purpose is to apprehend the subject(s) of I-card(s).

113.     Indeed, as set forth above, following the plaintiff's arrest, the defendant Detective David Bell had prepared an NYPD document entitled "***Complaint - Follow Up Informational Report - General Investigation***" (**"Follow-Up No. 22"**), within which he had stated that the "*Unit Reporting*" was the "***Bronx Warrant Apprehens***".

114.     The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, constituted a deliberate indifference to the safety, well-being and constitutional rights of all members of the public, including but not limited to the plaintiff; deprived the plaintiff of due process, were the proximate cause of, and moving force behind the constitutional violations suffered by the plaintiff as alleged herein, and deprived plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States:

(a)     The right of the plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

(b )     The right of the plaintiff not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured to him by the Fifth and Fourteenth Amendments to the Constitution of the United States.

115.     The defendants Detective Manuel Perez, Detective David Bell and Detective/Police Officer John Doe 1 were the actual agents of the defendant City of New York and were following the customs, practices, ordinances and/or regulations of the City of New York when they violated the plaintiff's constitutional and civil rights, and the City of New York is therefore responsible for their acts, and liable to the plaintiff for the damages he suffered.

116.     The actual principal/agent relationship between defendant City and the defendant officers was created by the fact they were employees of defendant City, and the City had the right to, and it did indeed

regulate and control the activities and conduct of the defendant officers.

WHEREFORE, plaintiff respectfully prays judgment as follows:

1.    For compensatory damages against all defendants in an amount to be proven at trial;

2.    For exemplary and punitive damages against all defendants in an amount to be proven at trial;

3.    For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

4.    For such other and further relief as the court deems proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated: Brooklyn, New York
         June 18, 2015

LAW OFFICES OF WALE MOSAKU, P.C.

By:                /s/

Wale Mosaku (AM5872)
Attorney for the Plaintiff
25 Bond Street, 3rd Floor
Brooklyn, N.Y. 11201
(718) 243-0994

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK:      15 Civ. 1043 (LGS)
_____

TRAYVON THOMPSON,

                                          Plaintiff,

        -against-

THE CITY OF NEW YORK, DETECTIVE
MANUEL J. PEREZ (Shield # 743; Tax # 925904),
POLICE OFFICER ADAM KREITZBERG
Shield # 26963; Tax # 931772); SERGEANT
CHRISTOPHER CESARZ (Tax # 903596),
DETECTIVE DAVID BELL (Tax # 918576) and
DETECTIVE/POLICE OFFICER JOHN DOE 1,

                                          Defendants.

_____

                  AMENDED COMPLAINT

_____


             LAW OFFICES OF WALE MOSAKU, P.C.
                 Attorney(s) for Plaintiff
                 25 Bond Street, 3rd Floor
                 Brooklyn, New York 11201
                    (718) 243-0994
_____


To:                          Service of a copy of the within
                             is hereby admitted.

                             Dated:................ 201_


Attorney(s) for Defendants
_____